Wolf Bakery and Cafeteria Company v. Commissioner.
Wolf Bakery & Cafeteria Co. v. Commissioner
Docket No. 7899.
United States Tax Court
1946 Tax Ct. Memo LEXIS 185; 5 T.C.M. (CCH) 389; T.C.M. (RIA) 46117; May 23, 1946
*185 On the evidence held, petitioner maintained consistently an accounting system on a cash receipts and disbursements basis. Further held, that ten per cent was a reasonable composite rate for depreciation on petitioner's equipment. Robert C. Foulston, Esq., 608 Fourth Nat'l Bank Bldg., Wichita, Kans., and Carl T. Smith, Esq., for the petitioner. Harlow B. King, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies of $426.44 in income tax for 1941 and $37.50 in declared value excess-profits tax, and for 1942, deficiencies of $572.07 in declared value excess-profits tax, and $10,162.70 in excess-profits tax. These deficiencies result from respondent's use of the accrual system of accounting in computing the petitioner's income *186 for the taxable years and from his use of a composite rate of five per cent for depreciation instead of the rate of ten percent used by petitioner. Findings of Fact In the taxable years the petitioner was a Kansas corporation with its principal place of business at Wichita, Kansas, at which point it operated a cafeteria and retail bakery. It had been originally organized as a partnership in the year 1918 and so continued until 1928, at which time it was incorporated. At all times it has been operated at the same location. It has a capacity for simultaneously serving approximately 500 people. Retail sales of bakery products are made at the cafeteria and at stands operated by petitioner's employees in certain stores in the City of Wichita. From the inception of the business in 1918, to and including the taxable years 1941 and 1942 here involved, petitioner has used the same system of accounting and has made its income tax returns as upon a cash receipts and disbursements basis with one exception. This was that in the year 1923, in computing and returning income for tax purposes, it reflected accounts receivable and accounts payable. But, upon audit of this return, respondent adjusted *187 it to eliminate such accounts, advising petition of his reasons as follows: Accounts Receivable as at Dec. 31, 1923, have been eliminated from income inasmuch as the books have been kept on a cash receipts and disbursements basis. This is the only period that accounts receivable and accounts payable were set up. Accounts payable have been eliminated from purchases as books are kept on a cash receipts and disbursements basis. Petitioner's main income is from its cafeteria business. Its customers are given checks or bills for the meals purchased which are paid to the cashier upon leaving the premises and the amounts thereof are rung up on the cash register. The sales of its bakery products at the cafeteria are cash sales treated in the same way. Its sales of bakery products at outside locations operated by petitioner's employees are handled by charging to each such location on a memorandum the products furnished for sale from time to time. These memorandums are kept until the remittance is received from the respective locations whereupon the memorandums are destroyed and the amount received is rung up on the cash register. During the entire life of the business only two general *188 book records have been maintained. There are a cash journal and a general ledger. The amount recorded as cash receipts during the day is taken off the cash register each evening and entered in the cash journal. Petitioner's payments are made by check and are recorded upon the check stubs and posting is made from these stubs to the cash journal as of the date the check is issued. The cash journal was closed on the last day of each month. Entries in the general ledger consisted of cash journal footings taken at the end of each month and posted to the general ledger. The month's cash receipts and disbursements, as shown by the cash journal, were transferred in toto to the general ledger At the close of each year a public accountant, employed by petitioner, made an audit of petitioner's books and prepared the financial statements required for credit purposes by the banks. In his computations for this purpose the accountants prepared a list of unpaid merchandise and expense accounts from the unpaid invoice file and entered the total of these invoices as accounts payable. The outstanding charge slips to the bakery sales location on which the remittances had not yet been received he entered *189 as accounts receivable. These entries were for the purpose of the bank statement alone and were never reflected in computing net taxable income except for the one year 1923, as hereinbefore detailed. No accounts receivable or accounts payable ledger is maintained. Most of petitioner's supplies were purchased locally. All of its supplies were paid for by check at the end of each week. Its custom, all through the life of the business, has been to write at the end of each week checks covering invoices and deliveries during such week. In case of purchases from out-of-town purveyors these checks were mailed without delay. Checks covering invoices or delivery slips from local merchants were attached to these invoices or slips and placed in a letter file in the office and delivered to the salesman or truck driver of the merchant when they called for them. In some instances these checks were not called for promptly by the representative of the merchant. Few of them, however, remained uncalled for longer than 30 days. They were, however, available at any time called for. In the audit made at the close of the year for petitioner by its public accountant, the items reflected as accounts payable *190 were the invoices and delivery tickets received for which checks had not been issued under the system described. Also reflected in the statement prepared by the accountant were certain deferred items representing prepaid insurance and accrued payroll tax. These items, together with the so-called accounts payable and accounts receivable as shown on the statement, were never taken into account in computing petitioner's net income for purposes of income tax. The accountant, in closing the books for the year, did, however, enter the amount of the inventory of supplies on hand and this item was reflected in computing net income. However, from the nature of its business this inventory item was a trivial factor as there was little variation in the figure from year to year. In determining the deficiencies for 1942, respondent disallowed as a deduction to petitioner for that year $1,895, representing the payment in that year of principal and interest on a note held by petitioner's president and representing salary for the year 1935. Respondent treated such payment as on the accrual system and representing a deduction for 1935. The note in question was given to petitioner's president as *191 evidence of the indebtedness of petitioner to him for salary for 1935 which, in view of petitioner's financial condition in that year, he had agreed to postpone collecting until conditions improved. The payment of this item pertained to the year 1942. Petitioner's system of accounting was consistently maintained throughout its life and was identically the same in the two taxable years involved as in prior years. It clearly reflected petitioner's income and was a cash receipts and disbursements basis of accounting. Petitioner, in its business, uses many items of property of a depreciable character, the usable life of which varies from 5 to 12 years and in a few instances slightly beyond this period. It has consistently used a composite rate of 10 per cent for depreciation on a straight line basis. In determining depreciation for the taxable years here involved, respondent reduced this rate to five per cent. A reasonable composite rate for depreciation of this property is upon the basis of a life of 10 years. Opinion Our finding of fact that petitioner's system of accounting was consistent, clearly reflected its income, and was that of cash receipts and disbursements, disposes *192 of the the first issue. Under section 41, I.R.C., it is mandatory upon the respondent, under those conditions, to approve such system of accounting. Huntington Securities Corp. v. Busey, 112 Fed. (2d) 368; Morris-Poston Coal Co. v. Commissioner, 42 Fed. (2d) 620. It has been consistently recognized that the determining factor as to whether a system of accounting was that of cash receipts and disbursements is the treatment of such cash receipts and disbursements. If receipts are not taken into account until the actual recepit of cash by the taxpayer and its disbursements not reflected until paid, the system is that of cash receipts and disbursements and will not be considered as one of accrual merely because some few items have been reflected on that basis. In such latter case adjustment of these exceptional items may be made, but a change in the taxpayer's accounting system is not justified. Wells v. Moore, 94 Fed. (2d) 108; Boca Ceiga Development Co., 25 B.T.A. 941; Cosmopolitan Bond & Mortgage Co., 30 B.T.A. 717; Estate of L. W. Mallory, 44 B.T.A. 249. In the present case petitioner's *193 books have been maintained upon an unvarying, consistent method of accounting for more than 20 years and its returns made and accepted on that basis. Such a case is one to which the language of the court in Osterloh v. Lucas, 37 Fed. (2d) 277, is peculiarly applicable. There it is said: * * * In our opinion, all that is meant is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax. This construction may work to the disadvantage of the taxpayer or the government at times, but if followed out consistently and honestly year after year the result in the end will approximate equality as nearly as we hope for in the administration of a revenue law. With respect to the note of $1,895 paid by petitioner in 1942, it appears that it was given as evidence of indebtedness, and petitioner being on a cash basis is entitled to its deduction in the year of payment. Quinn v. Commissioner, 111 Fed. (2d) 372; Jenkins v. Bitgood, 101 Fed. (2d) 17. As to petitioner's *194 use of a composite rate of 10 per cent for the depreciable property, we think the record clearly sustains the reasonableness of a determination of an average life of 10 years. We note, moreover, that the general rate approved by respondent in his Bulletin "F" - Depreciation Rates - for bakeries is 12 1/2 to 14 years and for restaurants, 10 to 14 years. In the present case respondent has applied a rate based on a 20-year life although the evidence is that the life of some of petitioner's more expensive equipment is considerably less than 10 years and less even than the normal average life of similar equipment used in other localities, by reason of certain water conditions in Wichita. It is also shown that the depreciable property in queston suffered abnormal depreciation during the taxable years because of the inability of petitioner to properly maintain it, in view of the shortage of repair parts and difficulty in obtaining competent employees for its operation. As one small item disallowed by respondent in making his computation of the deficiency for 1941 does not appear to have been questioned by petitioner. Decision will be entered under Rule 50.